IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SHIVAKUMAR BAVIKATTE,       § | |
|         Plaintiff,       § | |
| V.       § | |
| § | |
| POLAR LATITUDES, INC. AND       § | A-15-CV-00437-LY-ML |
| FLEETPRO OCEAN, INC.,       § | |
|         Defendants.       § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Magistrate Court are Defendants' joint Motion to Dismiss [Dkt. #15], Plaintiff's Response to Defendants' Motion to Dismiss [Dkt. #23], and Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss [Dkt. #26]. The Motion and related briefing were referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. After reviewing the pleadings, the relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

**I.   BACKGROUND**

Plaintiff, Shivakumar Bavikatte, arranged an Antarctic cruise through an online travel agency, Adventure Life, based in Montana. Mot. Dism. [Dkt. #15], Ex. A at 1-4. The "cruise fare" included the cruise itself, one night of hotel fare in the "embarkation city," Ushaia, Tierra Del Fuego, Argentina, and transfer from the hotel to the ship upon embarkation and from the

1

ship to the airport on disembarkation. *Id.* at 6. Travel from Bavikatte's home in Texas to Ushaia, Tierra Del Fuego, Argentina was specifically excluded from the cruise fare sold by Adventure Life. *Id.* at 5.

Bavikatte traveled from Texas to Argentina and boarded the cruise ship, the *Sea Explorer,* without any reported incident on or about January 14, 2015. *Id.* Bavikatte alleges, however, that he was injured in a fall when the ship encountered rough seas on or about January 16, 2015. Not. Removal [Dkt. #1] Ex. 1, Pf's Orig. Pet. at 2. Bavikatte asserts the bed in his guest room was "supposed to be anchored to the floor," and therefore he was holding onto it for stability during the choppy passage. *Id.* While Bavikatte was holding onto the bed, it came loose from the floor. *Id.* Bavikatte fell, sustaining injuries to his cervical spine that, he alleges, required surgery. *Id.* According to Bavikatte's Original Petition, the fall occurred in international waters, while the ship was crossing the "Great Passage" between South America and Argentina. *Id.*

On April 21, 2015, Bavikatte filed suit in the 98th Judicial District Court of Travis County against the operator of the cruise, Polar Latitudes, Inc. ("Polar Latitudes"), and the manager of the cruise ship, FleetPro Ocean, Inc. ("FleetPro"). Not. Removal [Dkt. #1], Ex. 1, Pf's Orig. Pet. Bavikatte is a resident of Texas, while Polar Latitudes is a Delaware corporation with its principal place of business in Connecticut, and FleetPro is a Florida corporation with its principal place of business in Florida. *Id.* On May 22, 2015, Defendants timely removed the suit to federal court based on this diversity of citizenship. 28 U.S.C. § 1332. Defendants invoked 28 U.S.C. § 1333(1), federal admiralty jurisdiction, as an independent, alternative basis for removal.

*Id.* at 3. Notably, Defendants "expressly reserve[ed] all questions other than that of removal, including . . . personal jurisdiction." Not. Removal [Dkt. #1] at 1.[1]

Defendants now move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, for dismissal to enforce a contractual forum selection clause pursuant Federal Rule of Civil Procedure 12(b)(6) and the modified *forum non conveniens* analysis articulated in *Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013). Mot. Dism. [Dkt. #15] at 1-3. Plaintiffs, in responding to the Motion to Dismiss, have requested jurisdictional discovery to establish "the amount of business the Defendants enter into with Texas citizens" and related matters. Resp. [Dkt. #23] at 19.

For the reasons outlined in detail below, the Magistrate Court RECOMMENDS the District Court GRANT the Motion to Dismiss for lack of personal jurisdiction. Given the lack of personal jurisdiction, the merits of Defendants' alternative forum selection clause ground for dismissal should not be addressed.[2] Because the lack of personal jurisdiction is clear on the face

---

[1] Challenges to personal jurisdiction may be waived if not brought in a pre-answer motion or included in the Defendants' responsive pleading. FED. R. CIV. P. 12(g), 12(h). "Courts have consistently held, however, that, '[r]emoval, in itself, does not constitute a waiver of any right to object to lack of personal jurisdiction.'" *Thompson v. Cartlidge*, No. 97-31304, 1998 U.S. App. LEXIS 39654, 1-2 (5th Cir. Sept. 3, 1998) (quoting *Nationwide Engineering & Control Systems, Inc. v Thomas*, 837 F.2d 345, 347-48 (8th Cir. 1988)); *see also Norsyn, Inc. v. Desai*, 351 F.3d 825, 828 (8th Cir. 2003). Defendants asserted the Court's lack of personal jurisdiction in their answer, filed May 28, 2015. [Dkt. #4]. By raising the personal jurisdiction issue in their answer following removal, Defendants have preserved their personal jurisdiction challenge. *Thompson*, 1998 U.S. App. LEXIS 39654 at *2.

[2] Defendants press the merits of their *forum non conveniens* argument, pointing to Supreme Court precedent holding "there is no mandatory 'sequencing of jurisdictional issues.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 428 (2007) (internal citations omitted). Because a dismissal for *forum non conveniens* is typically not an adjudication of the merits of a case, "*forum non conveniens* may justify dismissal of an action though jurisdictional issues remain unresolved." *Id.* This language is, of course, permissive. *Id.* Nothing requires a court to address *forum non conveniens* arguments before jurisdictional arguments, and indeed, "jurisdictional questions ordinarily must precede merits determinations in dispositional order," *Id.* (internal citations omitted).

of the pleadings, the Magistrate Court FURTHER RECOMMENDS the District Court DENY the motion for jurisdictional discovery contained in Plaintiff's Response [Dkt. #23].

## II.  STANDARD OF REVIEW

In an admiralty case, a federal court may exercise personal jurisdiction over a nonresident defendant to the same extent allowed by the law of the forum state, consistent with due process. *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F. 3d 327, 343 (5th Cir. 2004). Likewise, a federal court exercising diversity jurisdiction must first determine whether the law of the forum state confers personal jurisdiction over the defendant. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *Id.* Because the Texas long-arm statute extends to the limits of due process, *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W. 3d 653, 657 (Tex. 2010), the court need only consider whether exercising jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). "The Due Process Clause of the Fourteenth Amendment permits the exercise of

---

In declining to address Defendants' *forum non conveniens* argument before determining personal jurisdiction in this case, the Magistrate Court notes that Defendants' Motion to Dismiss on this ground is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis of a contractual forum selection clause. Mot. Dism. [Dkt. #15] at 1. A 12(b)(6) motion, requesting dismissal for "failure to state a claim," is typically an adjudication of the merits of a claim (or lack therof). FED. R. CIV. P. 12(b)(6). Moreover, Defendants invoke, not a traditional application of *forum non conveniens* factors, but the "changed calculus" of *Atlantic Marine*, which involves significant burden-shifting and "presupposes the existence of a valid, enforceable forum selection clause*.*" 134 S. Ct. at 581, n.5.

As the validity and enforceability of the forum selection clause is a disputed issue in this case, application of the *Atlantic Marine* analysis would require something more than the "deliberate abstention from the exercise of jurisdiction" contemplated by the traditional doctrine of *forum non conveniens*. *Sinochem*, 549 U.S. at 430 (internal citations omitted). *See, e.g.*, *Cline v. Carnival Corp.*, No. 3:13-CV-1090-B, 2014 U.S. Dist. LEXIS 17415, *8 (N.D. Tex. 2014) ("An initial dispute to resolve is whether the forum selection clause in each Plaintiffs'' Ticket Contract is valid and enforceable.") Therefore, the Magistrate Court finds it prudent to address the personal jurisdiction analysis before delving into issues of contract enforcement. As noted in the text, above, the Magistrate Court finds personal jurisdiction is lacking as to both Defendants. In the absence of personal jurisdiction over either Defendant, any opinion on the validity of the forum selection clause would be purely advisory. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101 (1998).

personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### A. Specific Jurisdiction

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are continuous and systematic.'" *Id*. (citations omitted).

Specific jurisdiction must be analyzed on a claim-by-claim basis. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W. 3d 653, 660 (Tex. 2010); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006). The Court need not assess contacts on a claim-by-claim basis, however, "if all claims arise from the same forum contacts." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150-51 (Tex. 2013). As Plaintiff alleges the same forum contacts support personal jurisdiction as to each of the claims asserted against Polar Latitudes and FleetPro, the Magistrate Court will analyze these contacts together. *Id.*

The Fifth Circuit applies a three-part framework to analyze the exercise of specific personal jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out

of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citing *Seiferth*, 472 F.3d at 271). To determine if sufficient contacts exist, the court considers the quality and nature of any contacts with the state and examines "'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 775 (1984)); *Int'l Shoe*, 326 U.S. at 318-19. To satisfy due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121.

"If [Plaintiff] can successfully establish the first two prongs [minimum contacts and a connection between the defendant's forum-related contacts and the plaintiff's cause of action], then the burden shifts to [Defendants] to show that exercising jurisdiction would be unfair or unreasonable." *Monkton*, 768 F.3d at 433. If, however, "the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction." *Kelly*, 301 S.W.3d at 658-59 (citation omitted).

### B.  General Jurisdiction

In the context of corporate defendants, a defendant may be said to live in Texas for purposes of establishing personal jurisdiction if it is incorporated in Texas, has its principal place of business in Texas, or has "continuous and systematic" contacts with the forum unrelated to the pending litigation. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Typically, general jurisdiction does not lie merely because Defendants' "sales are sizable" in the proposed forum. *Id.* at 761-62. Likewise, the fact that a manufacturer employs distributors to market its wares in the United States does not, without more, establish general jurisdiction in a particular state. *Id.*;

*see also J. McIntyre Mach., Ltd. v. Nicastro,* 131 S. Ct. 2780, 2791-2792 (U.S. 2011) (Breyer, J., concurring). General jurisdiction is only available where the defendant's contacts are so extensive the defendant can fairly be said to be "at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see also Kelly*, 301 S.W.3d at 660.

### C. Jurisdictional Discovery

In the course of making necessary findings of jurisdictional fact, the Court has broad discretion to permit a party to conduct jurisdictional discovery. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). To support a request for jurisdictional discovery, however, Plaintiff must first make "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc*., 415 F.3d 419, 429 (5th Cir. 2005). A preliminary showing does not require proof that personal jurisdiction exists, but "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Id*. (internal citation omitted). In other words, Plaintiff must state what facts discovery is expected to uncover and how those facts would support personal jurisdiction. *Kelly v. Syria Shell Petroleum Dev. B.V*., 213 F.3d 841, 855 (5th Cir. 2000). "Discovery on matters of personal jurisdiction . . . need not be permitted unless the motion to dismiss raises issues of fact." *Wyatt*, 686 F.2d at 284. "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Id.*; *see also Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. Tex. 2000).

### III.  ANALYSIS

Plaintiff asserts personal jurisdiction against each Defendant arises out of the fact that both Polar Latitudes and FleetPro rely on travel agents to sell their cruise packages to consumers

in the United States (and particularly, in Texas).  Resp. [Dkt. #23] at 12-13.  Plaintiff contends the travel agency, Adventure Life, is an agent authorized to "act on behalf of Defendants in soliciting, targeting, and procuring passengers for Defendants' cruise," and therefore Adventure Life's conduct in soliciting cruise purchases in Texas is attributable to Defendants.  *Id.* at 14-15.  According to Plaintiff, "Defendants Polar and FleetPro purposefully directed their product in to the stream of commerce in this forum, through agents like Adventure Life Travel Agency, with the expectation that it would entice and be purchased by people in this forum."  *Id.* at 13.  Plaintiff further contends that jurisdictional discovery might uncover additional facts relevant to personal jurisdiction, such as "the amount of business the Defendants enter into with Texas citizens, the amount of business they attempt to solicit from Texas through their agents and marketing, how often vessels in their fleets visit Texas ports and other related contacts regarding the purposeful availment of Texas." *Id.* at 19.

Plaintiff's "agency" arguments are foreclosed by the Supreme Court's recent decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  In this case, a group of Argentinian residents filed a complaint in the Northern District of California against Daimler A.G. ("Daimler"), a German company, concerning alleged human rights abuses in Argentina.  *Id.* at 750-51.  Plaintiffs based their personal jurisdiction argument on an agency theory, asserting Daimler's U.S. distributor "should be treated as an agent for jurisdictional purposes." *Id.* at 752.  The distributor had a regional office and several sales centers in California.  *Id.*  Plaintiffs produced evidence that over 10% of all sales of Daimler's new vehicles in the U.S. took place in California.  *Id.*  They argued this California market activity was a "substantial, continuous, and systematic course of business," sufficient to support general jurisdiction over Daimler.  *Id.* at 761.

The Court assumed—without deciding—that the distributor could be considered an agent of Daimler for jurisdictional purposes, and the distributor's contacts could be attributed to Daimler. *Id.* at 760. Nevertheless, the Court found the sales activity of the distributor in California was not enough to support general personal jurisdiction against Daimler. *Id.* "If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which [a distributor's] sales are sizable." *Id.* at 762. The Court required more than marketing and sales in the state to support general jurisdiction. *Id.*

Bavikatte's jurisdictional agency argument is indistinguishable from the argument rejected in *Bauman*. Like the *Bauman* plaintiffs, Bavikatte complains of a personal injury that occurred outside the United States. Like the *Bauman* plaintiffs, Bavikatte bases his jurisdictional argument on an "agency" theory, attributing to the Defendants the acts of the travel agent who sold him the cruise package. Finally, and most importantly, the alleged acts of the travel agent (and the factual allegations made in connection with Plaintiff's request for jurisdictional discovery) concern nothing more substantial than marketing and sales activity in the proposed forum state, just as in *Bauman*. 134 S. Ct. at 762. Plaintiff has not—and under *Bauman*, cannot establish general personal jurisdiction in Texas against either Polar Latitudes or FleetPro on the basis of sales and marketing activities conducted by a Montana travel agency. *Id.*

Plaintiff attempts to argue for specific jurisdiction by asserting that but for his purchase of the cruise ticket, he would not have been on the ship and therefore his fall would have been averted. Recent Fifth Circuit precedent flatly rejects this type of attenuated causation analysis in the context of specific personal jurisdiction. *Eddy v. Printers House (P) Ltd.*, No. 15-103790, 2015 U.S. App. LEXIS 17410, * 9-10 (5th Cir. Oct. 2, 2015). In *Eddy*, the plaintiff was injured

by a printing press manufactured in India and distributed in the United States. *Id.* at *1-2. The plaintiff attempted to assert specific personal jurisdiction over the manufacturer based on, *inter alia*, the manufacturer's act of shipping spare parts directly to the Texas factory where the plaintiff was injured. *Id.* at *9-10. Even assuming this shipment indicated the company "may have purposefully targeted Texas," the Fifth Circuit found there was no specific jurisdiction because this purposeful conduct was not related to the injury in question. *Id.* "The court found that the shaft shipped with the spare parts connects to an entirely different portion of the printing press than the portion Eddy alleged caused his injury." *Id.* at 10.

Plaintiff's claimed injury is even further removed from the Defendants' alleged contacts with Texas. Even assuming the solicitation of the travel agency is attributable to Defendants in this case, Plaintiff "does not allege that his injury arises out of or relates to [the sale of the ticket] in Texas." *Id.* Plaintiff acknowledges Defendants rely on multiple independent travel agencies to market and distribute their cruise packages. Resp. [Dkt. #23] at 14; Mot. Dism. [Dkt. #15] at 18 and Ex. A, 1-2. The travel agency that allegedly solicited Plaintiff's ticket purchase is not a defendant in this suit. Plaintiff's allegations do not relate to fraudulent inducement, false advertising, or any other theory relating to the sale and purchase of the ticket. Instead, Plaintiff alleges he suffered a fall due to unsafe conditions in his cabin on a ship sailing from Argentina to Antarctica and back. The circumstances of Plaintiff's injury are far too attenuated from the sale of the cruise package in Texas to support specific personal jurisdiction here. *Eddy*, 2015 U.S. App. LEXIS 17410 at* 9-10.

The record reflects neither Defendant has any offices, property, employees, or bank accounts in Texas. Mot. Dism. [Dkt. #15] at 17-18 and Ex. A, Ex. B. The cruise on which Plaintiff was injured did not originate, terminate, or operate in Texas waters, nor does any other

10

cruise operated by Defendant Polar Latitudes. *Id.* at 17, Ex. A. Plaintiff's injury occurred in international waters far from Texas. On this record, Plaintiff has failed to make out a prima facie case supporting either personal or general jurisdiction. *Alpine View*, 205 F.3d at 215. Therefore, jurisdictional discovery is not warranted. *Id.*

## IV.    RECOMMENDATIONS

For the reasons outlined in detail above, the Magistrate Court RECOMMENDS the District Court GRANT the Motion to Dismiss [Dkt. #15] based on lack of personal jurisdiction, and DISMISS all of Plaintiff's claims WITHOUT PREJUDICE. There is no need to address Defendants' alternative grounds for dismissal.

Because the lack of personal jurisdiction is clear on the face of the pleadings, the Magistrate Court FURTHER RECOMMENDS the District Court DENY the motion for jurisdictional discovery contained in Plaintiff's Response [Dkt. #23].

## V.    OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party

from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED December 8, 2015

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE